[No. 7,166—In Bank.]
November 9, 1882.

## PIERRE PRIET et al. v. CHARLES HUBERT et al.

County Warrant—Dupont Street Commission.—Action brought under the fifteenth section of the Act to authorize the widening of Dupont Street in the City and County of San Francisco (Statutes 1875-6, p. 433). Hunter, one of the defendants, was the owner of a lot of land, and plaintiffs had a leasehold interest therein. The Dupont Street Commissioners assessed the damages to the lot at ten thousand nine hundred and thirty-two dollars in favor of Hunter, "and to all owners and claimants, known and unknown." A warrant (No. 92) was drawn on the Dupont Street Fund in favor of Hunter for the ten thousand nine hundred and thirty-two dollars, and was by him indorsed to one Tibbey, who was Secretary of the Board of Commissioners. Afterwards, the Board ascertaining that there was a lease of the lot, and a doubt or dispute about the value thereof and of the damages, drew another warrant (No. 114), the one in controversy, payable out of the same fund and for the same amount, and deposited it with the defendant Reynolds, as County Clerk, and notified the defendant Hubert, as Treasurer of the City and County, of the drawing and depositing thereof, and of the description of the lot of land covered by warrant 114. Afterwards Hubert, through a deputy, paid in full to Tibbey warrant No. 92. The Court below held the payment was to Hunter, received by his authorized agent, and was in full satisfaction of the award and of warrant No. 114, and denied relief as against the defendants Hubert, Treasurer, and Reynolds, County Clerk. In this Court, *Held:* If the finding, that warrant No. 92 was delivered to and left with Tibbey by defendant Hunter, "with power and authority from said Hunter to deliver the same to defendant Hubert, Treasurer, and collect and receive from him the amount expressed therein," means that there was an actual agreement between

Hunter and Tibbey, to the effect that the latter should collect the warrant, either for himself or Hunter, the evidence does not support the finding. The evidence clearly shows that the warrant was to be left with Tibbey, "to be placed in the hands of the County Clerk" until such time as the dispute between Hunter and the plaintiffs should be determined.

WHEN PAYMENT BY TREASURER IS VIOLATION OF OFFICIAL DUTY.—The payment by the Treasurer, with full knowledge of the facts, to Tibbey of the moneys which he himself had set apart for the payment of warrant No. 114 was made in violation of his official duty.

EFFECT OF UNAUTHORIZED PAYMENT.—Such payment to Tibbey of the money which should have been reserved for distribution in accordance with the decree, herein, was not a payment to Hunter; nor could the plaintiffs be deprived of their interest in warrant No. 114, or the proceeds thereof, by the circumstance than the Treasurer had paid a like sum to another person upon another warrant in which the plaintiffs had no interest.

PARTIES—BILL IN EQUITY—EFFECT OF DECREE IN THIS CASE.—Section 15 of the Act, provides that a party in interest may in a case like this proceed against the Treasurer by a bill in equity; all persons in interest, if known, being made parties. And it was the intent of the Legislature that the decree of the Court should adjudicate the conflicting claims and provide for a just and proper distribution between the claimants and should conclusively determine the duty of the Treasurer to pay to the parties adjudged to have an interest in the warrant the sum decreed to be the value of such interest.

DIRECTIONS AS TO PROCEEDINGS AND DECREE.—In this case directions given as to the proper proceedings to be taken, and decree to be entered by the Court below.

APPEAL by plaintiffs from the judgment in the Twelfth District Court, City and County of San Francisco, in favor of the defendant Charles Hubert, and from the order denying plaintiff's motion for a new trial. Appeal by defendant David Hunter from the judgment in said Court against him in favor of the plaintiffs, and from the judgment in favor of the defendants Charles Hubert and Thomas H. Reynolds, and also from the order denying a motion for a new trial. DAINGER-FIELD, J.

This is an action brought by plaintiffs to have determined the respective interests of the plaintiffs and the defendant David Hunter in a warrant, No. 114, drawn by the Board of Dupont Street Commissioners in the City and County of San Francisco upon the City and County Treasurer to pay the damages assessed under the Act of March 23, 1876, (Stats. 1875–6 p. 433), and deposited with the defendants Thomas H.

Reynolds, as Clerk of the City and County, under the provisions of Section 15 of the Act.

The Court below gave judgment in favor of the plaintiffs against the defendant David Hunter for the sum of one thousand six hundred and fifty dollars as damages; and judgment in favor of the defendants Charles Hubert and Thomas H. Reynolds as against both plaintiffs and the defendant Hunter.

The other facts are stated in the opinion of the Court.

*D. H. Whittemore,* for Plaintiffs (Appellant and Respondent).

He, after a statement of the evidence and argument upon the facts, concluded: "We are satisfied with our judgment against Hunter, and he is greatly to blame for placing it in Tibbey's power to get the money—ours as well as his own—and he is clearly responsible to us. It is only in the event that the judgment between Hunter and Hubert is reversed, that we ask to have the judgment between plaintiff and Hubert reversed."

*H. J. Tilden,* for David Hunter, Appellant.

Warrant No. 92 was never issued by the Commissioners. Issue is to send out, to put in circulation for use. (Webster's Dict.) Nor was there any authority for the drawing of warrant No. 92. It was never delivered to Hunter, but was kept by H. S. Tibbey, the Secretary of the Commissioners to be deposited with the County Clerk as required by said Act. Nor was it indorsed. Indorsement consists in writing one's name on a negotiable instrument, and delivering it another person with intent to pass the title. (Civil Code, §§ 3108, 3123; Story on Promissory Notes, § 120, a; *Marston* v. *Allen,* 8 M. & W. 499.)

Certainly the evidence does not show that Hunter delivered it to Tibbey, or intended to pass the title to him or any one; nor is it negotiable. A negotiable instrument is one for a fixed amount and payable absolutely, and not from any particular fund. (3 Kent, side page 76; Story on Bills of Exchange, § 46; Civil Code, § 3095.) Warrants drawn on the County Treasurer are not negotiable. (*People* v. *Gray,* 23 Cal. 125; *Dana* v. *San Francisco,* 19 id. 486; *Argenta* v. *San Francisco,* 16 id. 275; *Martin* v. *San Francisco,* id. 285.)

Tibbey was acting in his official capacity as Secretary of the Dupont Street Commissioners at the time and in the matter of the signing of said warrants by Hunter, and in retaining warrant No. 92 ; and he retained it as such Secretary, in obedience to a law binding both on Tibbey and on defendant Hunter, in order that said Commissioners could deposit it with the County Clerk. Tibbey did not retain the warrant as indorsee. Hunter had no reason to suppose that the Commissioners would not perform their duty and comply with the provisions of said Act, and deposit said warrant with the County Clerk.

If the Treasurer had paid the warrant in good faith, and without notice of the facts, there might be some excuse for the payment; but the Treasurer had notice of the drawing of warrant No. 114 for the award of damages to said lot No. 2, block No. 118 ; he was the Treasurer of the Dupont Street Commissioners, was served with written notice of the drawing of warrant No. 114 for the damages to said lot, and registered the warrant on July 14, 1877. (See Civil Code, §§ 18 and 19; *McClure* v. *Town of Oxford*, 94 U. S. 432 ; *Christy* v. *Sullivan*, 50 Cal. 338 ; Wade on Notice, § 439 ; *Commercial Bank of Rochester* v. *Colt*, 15 Barb. 506.)

If warrant No. 92 had been a negotiable instrument, the payment, under the circumstances of this case, would not have been valid.

The rule is that a payment is valid only when made *bona fide*, without any knowledge of facts which justly impair or destroy the rights of the holder. (Story on Bills of Exchange, § 450 ; *Redington* v. *Woods*, 45 Cal. 421 ; *Dresser* v. *Missouri R. R.*, 93 U. S. 93 ; Civil Code, § 3164.)

The Court erred in rendering a money judgment against defendant Hunter and in favor of the plaintiff, because, as stated above, this is an equitable action in the nature of a special proceeding for the just distribution of warrant No. 114, as provided by section 15 of said Act, and not an action for damages.

I respectfully submit that the judgment should be reversed and a judgment entered distributing the warrant No. 114 between the plaintiff and defendant David Hunter.

*J. F. Cowdery* and *W. C. Burnett*, for Respondents Hubert and Reynolds.

Warrant No. 92 was issued by the Board of "Dupont Street Commissioners" under their official seal, used by the Board to verify their official acts (Stat., § 4), April 20, 1877, for ten thousand nine hundred and thirty-two dollars, for the award for damages, etc., to David Hunter, or order, signed by the President and Secretary of the Board; and there was not from that time any power in the Board to issue another warrant for the identical damages. (Stats., §§ 11; 14, 15.)

There was but one "Dupont Street Fund," and that was created by the statute, and consisted of all the moneys arising from the sale of bonds, and no subdivisions thereof are provided for by the statute; and all of said moneys, whether placed in bags, boxes, or anywhere else in the Treasurer's office, were simply moneys in gross of the "Dupont Street Fund," and were payable upon the presentation of warrants as they came in.

Warrant No. 92 was drawn to David Hunter, or order, and indorsed by him, "Received payment, David Hunter." The principles of "indorsements," mentioned in appellant's points and authorities, do not reach the case of an admission of payment.

McKINSTRY, J.:

The action was brought under the fifteenth section of an Act to authorize the "widening of Dupont street." (Stats. 1875–1876, p. 433.) The section reads:

"In all cases, when the owner or owners of any subdivision of land taken for the widening of said street, or of any improvements destroyed or injured, is or are unknown, or is or are known to be laboring under any legal disability, and in cases where there are liens or incumbrances, *or leases*, or conflicting claims, or disputes or doubts about the title of any lot or subdivision of land, which can not be adjusted between the parties in interest, in all such cases it shall be the duty of the Board of Commissioners to draw a warrant on the Treasurer of said city and county, payable out of said Dupont Street Fund, for the amount awarded in each case as the

value of the respective lots of land taken for said street, or for damages awarded on account of improvements destroyed or injured by reason of the widening thereof, as fixed in said report, and to deposit said warrant with the County Clerk of said city and county; and thereupon, and on proof of the same, the said Board shall be entitled to be put in possession of such lots of land as shall be taken for said street, in the same manner as provided in Section 16 of this Act, and the title to said lots of land shall thenceforth be vested in said city and county as effectually as if the same had been conveyed by deed executed by the true owners thereof. Said Board shall also notify the said Treasurer of the drawing of said warrant, and furnish him with a description of the lot referred to by said warrant; and the parties in interest in said lot may proceed against the Treasurer by bill in equity for an adjudication to settle the conflicting claims to the same, or to provide for its just and proper distribution, in which suit all parties in interest or dispute shall be made parties, if known. On entry of a final decree of Court in such action, the said County Clerk shall deliver the warrant to the party or parties entitled thereto, according to the order of the Court. The only requisition upon the Treasurer shall be to answer whether he has the money in the 'Dupont Street Fund' to pay the warrant when presented."

The Court below found that the Dupont Street Commissioners assessed the damages for the lot described in the complaint at ten thousand nine hundred and thirty-two dollars, and assessed the same in favor of David Hunter, one of defendants, " and to all owners and claimants, known and unknown."

The Court also found " that on the twentieth day of April, 1877, the Board of Dupont Street Commissioners drew a warrant, such as was provided for in such cases by said Act of the Legislature, in favor of said David Hunter, for said sum of ten thousand nine hundred and thirty-two dollars, gold coin, payable out of the Dupont Street Fund, provided for in said Act, and being for the award and assessment aforesaid, which warrant was numbered ninety-two (92), and was in the words and figures as set out by copy in the amended answer of defendants, Hubert, Treasurer, and Reynolds, County

Clerk, of the City and County of San Francisco, filed herein on the eighteenth day of September, 1879, and was signed by the President, and countersigned by the Secretary of said Board, as were all other warrants ever drawn by that Board, and indorsed as follows, viz.: 'No. 92, $10,932. Warrant on Dupont Street Fund, in favor of D. Hunter.'

"That afterwards, on the twenty-seventh day of April, 1877, said defendant, Hunter, indorsed said warrant No. 92 as follows, viz.: 'David Hunter,' which indorsement was witnessed in writing, as follows, viz.: 'Indorsement correct, H. S. Tibbey;' and at the same time last aforesaid, said Hunter further indorsed said warrant No. 92, as follows, viz.: 'Received payment, David Hunter;' which indorsement last aforesaid was then, and had been for years last preceding that time, and still is, the usual indorsement acknowledging receipt of money due upon warrants upon the treasury of said City and County of San Francisco.

"That at the time last aforesaid, said warrant No. 92 was delivered to said Hunter, and by him delivered to and left with one Henry S. Tibbey, with power and authority from said Hunter to deliver the same to defendant Hubert, Treasurer, as aforesaid, and collect and receive from him the amount expressed therein of ten thousand nine hundred and thirty-two dollars, gold coin.

"That afterwards, on the ninth day of July, 1877, said Board found that there was the said lease of said lot, and a doubt or dispute about the value thereof, and of any damages to the leasehold interest thereunder caused by the widening of Dupont street under said Act of the Legislature, drew another warrant, No. 114, payable out of said fund, for the same amount of ten thousand nine hundred and thirty-two dollars, for which said warrant No. 92 had been drawn, as aforesaid, and so awarded to said lot of land, as hereinbefore stated, and deposited the same with defendant Reynolds, County Clerk, and on the fourteenth day of July, 1877, notified defendant Hubert, Treasurer, of the drawing and deposit thereof, and of the description of the lot covered by said warrant No. 114.

"That on the thirtieth day of August, 1877, said Tibbey presented said warrant No. 92 pursuant to his power and

authority aforesaid, to said defendant Hubert, Treasurer, who paid the same to him on that day out of the money in the Dupont Street Fund to its full amount of ten thousand nine hundred and thirty-two dollars, gold coin, and marked the said warrant No. 92 'paid' and filed the same in his office.

"That at the time of such payment defendant Hubert had no notice, nor had he ever received any notice that said warrant No. 92 was drawn for the value of the identical lot and damages for which warrant No. 114 was drawn.

"That said Hunter and said plaintiffs are the only persons who have ever claimed any part of said award of ten thousand nine hundred and thirty-two dollars, and said Hunter is the only person who has ever claimed the whole thereof."

If the finding, that warrant No. 92 was delivered to and left with one Henry S. Tibbey (Secretary of the Dupont Street Commissioners, by defendant Hunter, "with power and authority from said Hunter to deliver the same to defendant Hubert, Treasurer as aforesaid, and collect and receive from him the amount expressed therein of ten thousand nine hundred and thirty-two dollars, gold coin," means that there was an actual agreement between Hunter and Tibbey to the effect that the latter should collect the warrant, either for himself or for Hunter, the evidence does not support the finding. The evidence clearly shows that the warrant was to be left with Tibbey " to be placed in the hands of the County Clerk" until such time as the dispute between defendant Hunter and the present plaintiff should be determined. As there was nothing on the face of No. 92 to indicate that it represented the award for the property in which the plaintiff claims an interest, it may be that Hunter, by indorsing it as he did, clothed Tibbey with its ostensible ownership, and that those ignorant of the real arrangement between the parties might assume Tibbey to be the owner. It may be that, by reason of such indorsement, the Treasurer would have been justified in paying the warrant to Tibbey—*had he been in a position to defend the payment of warrant No. 92 to any one.*

The moneys awarded for the lot of land described in the complaint, and improvements thereon, were not paid to Hunter or to any one authorized by Hunter to receive them, Hunter, personally, has never received them, and, if he is to be

treated as having received them it is because he is estopped
by his indorsement of warrant No. 92 from denying that
Tibbey was authorized to receive them for him. But such
estoppel could only be asserted by the Treasurer in case he
had paid to Tibbey the sum called for by the warrant, in ig-
norance of the *fact* that Tibbey was not authorized to receive
the money. The evidence shows, beyond dispute, that the
Treasurer paid to Tibbey the sum called for by No. 92 in
violation of his official duty, and with full knowledge that 92
represented the amount of damages allowed for the property
to which the present plaintiff asserted a claim, and that he
paid 92 with the money which he himself had set aside for
the payment of 114, then on deposit with the County Clerk to
await the determination of this action. The payment to Tib-
bey of the money which should have been reserved for dis-
tribution in accordance with the decree herein, was—under
the circumstances—no more a payment to Hunter than would
have been a payment of the sum to a stranger, or an appro-
priation of it by the Treasurer himself. (To avoid any possi-
ble misapprehension it is proper here to say that the payment
was made by a deputy of the Treasurer and not by that of-
ficer personally.) It is not necessary to decide whether the
Treasurer would be authorized in this action to object to a de-
cree that defendant Hunter had an interest to the extent of a
certain sum in warrant 114, and its proceeds, on the ground
that he had already paid inadvertently to Hunter a like or
or greater sum. As the case is presented it appears the Treas-
urer has never paid to Hunter or to his order any portion of
the amount awarded to the property in which plaintiff claims
an interest as lessee.

Certainly the plaintiff here, who, beyond all question, is en-
titled to an interest in warrant 114, and in the proceeds there-
of, to the extent of one thousand six hundred and fifty dol-
lars, could not be deprived of his claim against the treasury
by the circumstance that the County Treasurer had paid a
like sum to another person upon another warrant. Plaintiff
had no connection with the receipt for, or indorsement of war-
rant 92 by defendant Hunter, nor did the law make the lat-
ter the agent of plaintiff to receive any warrant awarded to

property in which the plaintiff was interested. Plaintiff had no interest in 92 or in any other warrant than 114; the only warrant deposited with the County Clerk.

The decree of the Court below should have adjudicated the conflicting claims of plaintiff, as lessee, and of defendant, as lessor, in warrant No. 114, and have provided "for its just and proper distribution." (§ 15.) At first view we were inclined to the opinion that the office of the Court would have been discharged by declaring the interest of each in the warrant No. 114, leaving any defense which the Treasurer might have against the payment of warrant 114 to be asserted when its payment should be demanded. But Section 15 provides that a party in interest "may proceed against the Treasurer by bill in equity," and a fuller consideration of its terms satisfies us that the Legislature intended that the decree in an action like the present should be binding upon the Treasurer, and conclusively determine his duty to pay to each of the parties adjudged to have an interest in the warrant the sum decreed to be the value of such interest.

As there is but one warrant, the decree hereafter to be entered should provide (the parties being properly indemnified) for the appointment of an officer of the Court to receive it, for the parties in interest, from the County Clerk, who, on the entry of final decree, must deliver the warrant to the party or parties entitled thereto, according to the order of the Court" (§ 15), and for a distribution of the amount collected upon the warrant by such owner.

Judgment reversed and cause remanded with direction to the Court below to enter a decree in accordance with the views expressed in the foregoing opinion.

MORRISON, C. J., and McKEE, ROSS, SHARPSTEIN, and MYRICK, JJ., concurred.